Lance. I had to replace my partner. I'm sorry. Give me your name again. Gavin. Got it. Got it. I have the old one. We filed it yesterday and the court was closed. So I understand that. I would like to, if I could, ready for me to proceed? Yes, sir. Thank you. Good morning. My name is Gavin Lentz of the law firm of Boqueto and Lentz. May it please the court and counsel, I have the pleasure of representing the Danziger and Delano law firm out of Texas. I would like to reserve three minutes for rebuttal if I may. That's fine. My clients sued the Morgan Verkamp law firm when they discovered that that firm was refusing to pay them millions of dollars in referral fees. My client had a referral relationship with them going back to 2005. Two cases, the Gaumeins case and the Epps case, were litigated in the Eastern District of Pennsylvania and generated almost $11 million in fees that came through my clients. They interviewed the clients, they screened the cases, they helped out, and they delivered them to the Morgan Verkamp firm. They were horrified to The district court's decision dismissing our complaint with prejudice for lack of personal jurisdiction was clearly wrong, and there is overwhelming evidence that the appellees waived any objection to personal jurisdiction by litigating the case extensively on the merits for 15 months. And I'd like to point out that in every one of the Third Circuit cases I read talking about when the courts would find waiver and what you should do and not do if you're going to want to protect an argument of the defense of lack of personal jurisdiction, there are 10 specific acts they took here that indicate waiver. How do we reconcile that with Monaco and more recently the Wagner v. Wagner case? In regards to writ of summons? Right. Because if the only way to raise personal jurisdiction is in those preliminary objections, that presupposes that there's been the filing of a complaint. And is that on your clients? That is, if you wait that long to file and you proceed with pre-complaint discovery, how can the failure to file something you're not even allowed to file in the court constitute waiver? Well, I think the existing cases, the Hlavik case and the Belray case, talk about that and I'll answer that. If you're going to be practicing in Pennsylvania, a writ of summons is on my menu every week. I'm either filing one or getting one. Everybody knows, every practitioner should know in Pennsylvania you file a rule to show cause. The court automatically will say to them, file a complaint, and if you don't, the complaint gets dismissed. So what the current Third Circuit case law says is, filing a rule to show cause is not a waiver and you need to attack and address and challenge personal jurisdiction early on so that you're not wasting judicial resources. They obviously knew how to file a rule to show cause because they did it in November 2017. Therefore, what they did in the 15 months prior to that constituted a waiver and I'll give you an example. They accepted service of the writ. They didn't have to do that. They didn't challenge jurisdiction. These are the 10 things that they did. They did not issue a rule to file a complaint and complain there's no jurisdiction. Had they done that within 30 days, they could have been in federal court and challenged jurisdiction. They produced extensive discovery, Your Honor, never once the word jurisdiction or lack thereof does not appear in any of their papers. They participated in a hearing on a motion to compel two e-mails and if you read anything else in the case, the two e-mails that issue are at the record at page 220 and 223. What they actually did here was they didn't want those e-mails coming out and those e-mails are where my client writes a letter to them and says, hey, I saw a case settled for $600 million. Was that the Epps case I referred you? And Morgan Verkamp's response is not, oh, I'm not sure or maybe. Heavens no, it's not the Michael Epps case. 30 days later, they file the lawsuit in the Eastern District of Pennsylvania on Michael Epps that we referred to them. Yes, I'm sorry, I apologize. Yes, you don't have a basis for arguing that the removal to federal court itself constitutes waiver or consent. No, not at all. It was waived prior to the removal. In fact, the decision, there's a couple of superior court decisions. There's the Lucasus, L-U-K-A-S-Z-O-N-A-S and cited in the briefs was the Monaco decision that says it gives a practitioner an out, gives you a safety valve. Filing a rule of short cause to file a complaint is not a waiver because then you have the complaint and you know exactly what the claims are. And filing the notice of removal is not a waiver. But when you've litigated the case for 15 months, and back to this issue, the judge in common pleas court, there's a hearing transcript. It's all part of the record. They never say, hey, judge, we don't want you to produce these emails because there's no jurisdiction. They argued and litigated the merits of whether those were privileged. The judge said they're absolutely not privileged. What they show is you're lying to the client and telling the client the email says you're going to compensate my client's firm. It says don't worry, I'm going to compensate the firm for the work they did. Then he emails my client and says we're not handling the X case when in fact they were. Your Honor, Judge Ambrose in the Asbestos case said you need to address these jurisdictional issues up front. You can't start litigating the case on the merits and if you don't like the way it's going, then raise jurisdiction. They took an appeal to the superior court. But you, based on the first question you were asked, you have a problem with regard to the Pennsylvania law. Which is? Under the Wagner case that was cited to you. In other words, there's a timing issue as to when you need to waive personal jurisdiction and it's normally at the time of the complaint as opposed to the filing of the precipice. Yes, but if you're a practitioner in Pennsylvania and you're aware of these cases, you should know that you can engage in conduct that waives jurisdiction by litigating the case even before the rule to show cause is filed. They should have filed the rule to show cause. They waited until 2017 November to file the rule to show cause. They had litigated the case for 15 months. That procedure was available to them. That procedure would not have constituted any waiver of jurisdiction. They could have done it, but what authority do you have that they had to do it? Where they had to do it is if they're What authority do you have? The authority that I have that they had to do it is the Bell Ray case and the insurance industry of Ireland case, which says if you engage in conduct, which litigates the merits of the case, you are deemed to have waived personal jurisdiction. It's something that's clearly waivable. And here's what I would say, Your Honor, to that question. If a writ is filed against you in Pennsylvania, you can do nothing. That's one option. But if you're going to challenge jurisdiction, you have to file a rule to file a complaint. You can't litigate the case on the merits. The Pennsylvania case says you have to ask to make the motion to file the complaint. The rule to show cause? Yes. No Pennsylvania state case says that you have it. No Pennsylvania state case. We're dealing with Pennsylvania state court. Federal court rules piggyback on what had to be filed under the local rules. Okay, so don't cite to me the Supreme Court case in Ireland. I want to hear about a Pennsylvania case. All I see is a Pennsylvania Supreme Court case that says you wait until the complaint. What says you have to move to speed up the complaint? What says that is that if you are going to litigate, I'm relying on the precedent that says the personal jurisdiction is a right that can be waived. It can be, but what Pennsylvania case says that resisting discovery on grounds of confidentiality and privilege amounts to a waiver that you had to move for the complaint before that? There's not a Pennsylvania state court that says exactly that, but they never mentioned jurisdiction at all, and they had that procedural tool available to them. The cases say you do have to raise and challenge jurisdiction first. It's the first thing you have to deal with, and the way to do that is either to raise an objection to the discovery process directly, file a motion for a protective order which is available, or state to the court we don't want to answer this discovery. There should be discovery limited to the issues of jurisdiction, which there's plenty of cases out there that say that. How do you reconcile that with Wagner? It's 2001 Pennsylvania Supreme Court case where the appellant didn't contest personal jurisdiction to resolve the party's property rights in general. They did pursue, there was litigation on collateral matters, and two years later, there's an objection filed as to the court's jurisdiction, and the Supreme Court said these other things were sort of collateral, including the discovery litigation. In the Wagner case, I think the only distinction I have is that it was collateral. This was the case that we were litigating. These issues were directly related to the merits of our claiming, we think you defrauded us, we think these emails will show that, give them to us, and they never once said in 15 months, they could have said they had an obligation to file a motion for a protective order rather than defend the case on the merits, which is what they did. Could we talk a little bit, let's assume that if our options here, if we don't agree that you prevail, our options here would be to just remand the case or to dismiss the case. Now, what are the consequences? Why shouldn't we dismiss the case? Are there some of your claims that would be barred in Ohio and Texas under the statute of limitations? Rules of professional conduct. Rules of professional conduct. Yes, there are. Why don't you give us specifics as to what would be barred in what jurisdiction? Can I talk about the specific jurisdiction, too, in that same regard? So we think there is also specific jurisdiction here because this Ohio law firm chose to litigate the case in here, in part because Pennsylvania litigated the case in the Eastern District of Pennsylvania. I'm talking about the EPS case. Okay, you want to make a specific jurisdiction point, and that's fine to make after you answer my question. Okay. My question is about what happens if we dismiss rather than remand. What time bars or ethics rules bar which pieces of the case in Ohio and I was getting to answering your question. The reason we believe from my client's discussions with them that they brought the case here was, one, they had brought other cases here in the Eastern District. They liked the way that they litigated Cuitan cases, and you can get a referral fee without doing anything beyond making the introduction. That is not the law at all in Ohio. If the case was transferred to Ohio, their claim that would be barred, and they had a relationship with this firm where they had collected fees. And if it's transferred to Texas, it looks like the professional rule of conduct 1.04, division of fees is allowed only if the client consents in writing. There is an issue regarding Texas as well that may bar the claim. It's not clear because there was no discovery. Ethics rules involved. Now, how about time bars? If we transfer it to the federal court in Texas or in Ohio, is there a statute of limitations? There would not be a time bar, but there may be a recovery bar. For the claims, there would not be a time bar. But if we dismiss, would there be a time bar for refiling in those places? You're saying there would not be? No, I'm saying there would not be. And I'm saying that the dismissal with prejudice was error and that that was my last argument was that at a minimum you should transfer the thing. It is our view that the district judge made no finding on waiver and that you have enough facts before you to make a finding on waiver and to remand the case with direction that it should continue thereafter. Now, we didn't get a single lick of discovery here. We have two emails that clearly show there was a misrepresentation made to referring counsel and the client. And I want to talk just one more minute about the specific jurisdiction is that they decided to file here because they want to get referred cases here from all over the country and there are liberal referral fee rules here. Lawyers coming in here like Mervyn Verkamp, Proact Vichy have to honor the rules here. It's a privilege to practice here. We now have direct record evidence here that what they were doing while litigating the case here for six years, they're the ones that chose to bring it here, that they knew they were going to dishonor the obligation and misrepresent to referring counsel that they even handled the case. That all occurred during a six-year period when they were in the Eastern District of Fair Play and Substantial Justice that you're going to hold a firm that chose the Eastern District of Pennsylvania to litigate for six years in this case. But we have other criteria that we have to look to. Well, we'll get you back on rebuttal and then let's hear from Mr. Singh. Okay. Thank you. Good morning. May it please the court. I'll start on this question. You better announce your name for the record. My name is Dijinder Singh, representing the FLEs. I'd like to start on the question of waiver, which is where I think most of the time. Why did you file the F case in federal district court in Eastern District of Pennsylvania? So there's nothing in the record about that. I think the decision was made to file the case there. The case turned into quite a good success. And so I think that supports the decision that the U.S. Attorney's Office here is good at litigating False Claims Act matters. And that may have been the reason. But there's nothing in the record about why the case was filed here. And I don't know that that's relevant to the specific jurisdiction question before you. And so because your question sort of alludes to, you know, were we establishing contacts with the state, let me talk about specific jurisdiction. Because I think it is clear that we were establishing some contacts with Pennsylvania. The question is whether the other side's claims arise from those contacts. And really they don't. So if you think about the hypothetical contract that they say existed, the contract as they describe it in their complaint. And it's odd that we're the only ones in the briefs who actually cite parts of the complaint. But what they say in the complaint is there was an oral agreement made in 2007. We're going to do this. We're going to pay a referral fee. Right? And then there was a breach of that oral agreement after the F case concluded because we didn't pay the referral fee. Okay. But nothing that happened in Pennsylvania matters for purposes of whether they have a valid claim. As we pointed out in our brief, and they don't have an answer to this argument, it doesn't matter how the F case turned into money. We could have filed it in any jurisdiction. We could have never filed it. We could have settled without a filing. We could have done any number of things. But they would say the same thing no matter what. And that shows you that. But Morgan Burkham's an Ohio firm, right? That's correct, Your Honor. So why not file in Ohio? Your Honor, again, there's nothing in the record about that. And I wouldn't want to speak to it because I don't. Those kind of strategic decisions are not really before the court in this case at this point in time. I will say the complaint contains no allegation about it. But what I can say is that from the explanation I just gave you, the filing in Pennsylvania is not essential to the other side's claims. Nothing about the fact that the case was filed in Pennsylvania gives rise to either the breach of contract claims or any of the intentional torts that they say were committed. And I want to emphasize this because the other side did really spend quite a bit of time and energy harping on how unjust this has all been. There are allegations in the court. They're talking about a fair piece of money that they claim that they're entitled to for having referred this person at the outset, although the first part of the case didn't go anywhere. It later came back, and it was filed, and it became very successful. That is a fair point that they allege that, Your Honor. I don't dispute that they allege that. I think if they want to litigate that, the place to do that is Ohio. And that's what they should have done. I'm not disputing their right to make allegations in a complaint and to litigate out this case on the merits. What we have argued, and what I think the district court was not wrong to agree with us on this point, is that this case simply does not belong in Pennsylvania. There is no nexus with the events that occurred in Pennsylvania that gives rise to their claims. Do you agree that under Section 1631 and the usual practice in the district courts, a dismissal with prejudice was improper? I agree it's extremely unusual. We did find one case, the Kennedy case that we cited in our briefs, in which this court affirmed a dismissal with prejudice on personal jurisdiction grounds. That is, I will admit, the only case we found holding as much. And so, you know, we think there is authority to affirm that disposition in this case for two reasons. First, that the other side did not really request a different remedy until it got to this court. And second, that there is no real way for them to cure the jurisdictional defects in their case. That said, if you don't like the result of that case, and you don't think that dismissal with prejudice is the appropriate remedy, I think the right thing to do in this case would be to hold that dismissal without prejudice is the right remedy, because they haven't really, again, they didn't ask for any other remedy until they got to this court. At a minimum, I don't think you should decide to transfer the case to Texas, which is what they're asking, because the parties certainly disagree. If there's going to be a transfer at all, the parties disagree about where the case should be transferred to. And those equitable considerations that go into a discretionary transfer decision probably aren't the type of thing you'll want to do in the first instance with no briefing on the question. It's incumbent on the district court under the statute to do an interests of justice analysis. Did that happen at all below? So there's no language in the court's opinion about the interests of justice analysis and about whether a transfer would be better than dismissal. But I think courts are within their discretion to dismiss cases without prejudice for lack of jurisdiction. I mean, the other side has already told you that they don't believe they would be prejudiced by that. We'll have a debate about that if and when they refile their case. But I don't think it was at all an abuse of the district court's discretion to dismiss the case in these circumstances. And I don't think it would be wrong for you to affirm under the precedent set by this Kennedy case. Now, that is an unpublished decision, so it's not controlling precedent. But it is, I think, persuasive to the extent it's relevant. And the facts seem to be on all fours. I did want to get to the issue of waiver, which is where my colleague on the other side spent the most time. But I saw you. I just want to start the waiver discussion with your analysis of the effect of the removal. You don't take the position that removal to federal court is here or there. This is all about whether there was waiver in the state court proceedings. So that's correct. There is. The leading treatise, Wright and Miller, says by removing, you do not thereby waive any defenses. And I think the way courts mostly look at this is if there had already been a waiver of a personal jurisdiction challenge in state court, then removal to federal court is not going to resurrect a waived challenge. So I don't think it changes the outcome. But certainly the act of removing to federal court is not going to waive our defense. In this case, one thing that's really interesting that you could look to is in their briefs, opening brief, page 29, and then at the end of the chunky footnote one on their reply brief. They come very, very close to conceding that had we filed preliminary objections in the state court after all of the stuff that they say waived our defense, we would not have waived our defense. They, in their reply brief, they say, you know, we arguably would not have waived our defense had we just filed preliminary objections in the state court and then tried to fault us for instead removing it. I think that's a clearly wrong position. But what their concession shows is that all of the stuff they're saying constituted a waiver beforehand, participating in discovery on grounds of attorney-client privilege, for example, is not enough to constitute a waiver. And Judge Bibas, as your questioning showed, there is no Pennsylvania case holding that. All of the authority says that the right way to do this is to wait until the complaint is filed and then file your preliminary objections. In the absence of any authority saying that we had to do anything else, I think it would be a very bad decision to say that there was waiver in this case because you want, look, in some cases personal jurisdiction is going to be a bit of a hairy inquiry. That's what this court's decision in O'Connor says about whether you're finding jurisdiction. But when you're talking about waiver, it really does make sense to have very clear and administrable rules. And in the Hlavik case, which we cite, and is on point, right, a party participates in pre-complaint discovery, removes the case to federal court, and then challenges personal jurisdiction, and the court finds no waiver. That's Judge Yon's opinion from 2005. And it's just completely on point, and it's a clear rule. It's administrable, and it establishes no waiver. I think parties should be able to rely on that precedent. I think this court should affirm the decision below to establish that precedent so that everybody understands exactly what the waiver rule is. I don't think that they are right to say that any of the things that happened beforehand constituted consent to litigation on the merits, including because, as Judge Krause's questioning pointed out, they really were collateral. We're not allowed to say in response to their request for pre-complaint discovery, you don't have a valid claim on the merits, right? We're not allowed to say that, and we didn't say that. All we said was, this information is privileged, and we don't think you need it to file a complaint. But that doesn't indicate our willingness to litigate on the merits at all, or especially it doesn't indicate an explicit waiver of a personal jurisdiction defense that Pennsylvania law preserves for us at the preliminary objection stage after a complaint is filed. Unless there are no other questions, I will speed up our discussion. Just briefly on the Hlavik case, they made a motion to do discovery. There's one deposition limited to the issue of jurisdiction. We got no depositions here whatsoever, and they actually answered discovery and raised the merits in their discovery responses. I wanted to point that out. I'm a little, you know, disappointed in the fact that it doesn't appear that the panel believes that there should be a close look at the specific jurisdiction argument that we've made. In the Gaumeins case, which is the case that came before the Epps case, we have a law firm that we caught hiding a fee from us, and through that process, we found out they were doing it again in the Epps case. They chose to come here to the Eastern District of Pennsylvania, and we have two emails knowing they were trying to swindle us out of a fee, for lack of a better term. The rules required them to honor the local rules of professional conduct, which say the rules of the local tribunal apply. That fee came in six years after they wrote that email. They kept the money, they transferred it to Ohio, and they paid themselves without us knowing about it, even though we had asked them specifically, hey, is that the case I referred you? I am troubled that that would not be deemed a specific jurisdiction. When you do something like that as a lawyer here, after you've been given the privilege to practice here, oh, just send it to Ohio, because then we won't have to pay it. I'm troubled by that. But did the Pennsylvania state court slack personal jurisdiction? Excuse me? Was the district court correct in finding that the Pennsylvania court slacked personal jurisdiction? I can empathize with everything you've said, but that's the issue before us. Yes, but on specific jurisdiction, under the O'Connor case, and if you find three things, they purposely directed their activities to the forum state, they chose it here because of the referral fee rules, it was the second case they litigated here, and it arises out of or relates to litigation. There would be no case if they hadn't earned a fee. That's a part four test. The test for contract actions, we have to look at what the forum contacts were in connection with the creation of the contract. Yes. Or its breach. Yes, and they litigated the case for six years after we referred it to them, and then they breached it by hiding the fact that they had actually brought the case when we asked them about it directly. All of that happened during a six-year period in the Eastern District of Pennsylvania when we know they, in fact, knew they intended to rip us off because we have the e-mail to the client. Don't worry, I'm going to contact the Delano firm and compensate them. But when we ask, they say no, we didn't handle the EPS case. What's the best? All that was done. Excuse me? What's your best authority for saying that litigating the KeyTown case itself gave minimum contacts? It is not litigating the case itself. It's the fact that the last element of our damages occurred when they obtained the fee here, lied to us about it, and then transferred it to Ohio. The local rules here, professional conduct 1.15F would say, if you know someone has a claim to an entitlement of a fee, you're supposed to escrow it. They didn't do that. They had local counsel here. They transferred it to Ohio and they dispersed it. So it's the conduct of them, once they get that, our damages, our claim is a contract. The last piece of it, the damages occurred when they got the fee and then refused to turn it over. That happened here. All right. Thank you very much. Thank you to both counsel for being with us today and for very well presented arguments. We'll take the last one.